IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **DEAVRIN SNEED,**<br><br>*Plaintiff,*<br><br>vs.<br><br>**CROWN EQUIPMENT CORPORATION,**<br><br>*Defendant.* | **Civil Action No.: 3:23-cv-743**<br><br><br>**CROWN EQUIPMENT CORPORATION'S MOTION TO EXCLUDE PROPOSED EXPERT OPINIONS OF JASON KERRIGAN** |

Pursuant to Federal Rules of Evidence 104(a) and 702, Defendant Crown Equipment Corporation ("Crown") moves for an Order excluding the opinions of Plaintiff's designated liability expert Jason Kerrigan. Dr. Kerrigan does not possess the requisite experience or qualifications to offer an expert opinion in the field of stand-up rider forklift design. For this reason alone, his testimony should be excluded. Further, even if this Court were to find that Dr. Kerrigan was qualified to offer some type of "expert" testimony, his opinions must nevertheless be excluded because they do not meet the standards for relevance and reliability as required by FRE 702 and the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

I.  INTRODUCTION

This products liability lawsuit arises out of a workplace incident that occurred on or about December 20, 2022, involving a Crown RC5500 Series stand-up rider forklift (the "subject forklift") manufactured by Crown. *See* Appendix ("App.") at p. 2-8. Plaintiff alleges that as he was loading and unloading pallets with the subject forklift at a Target Corporation ("Target") Distribution Center in Midlothian, Texas, it malfunctioned, accelerated at a high rate of speed, the

brake mechanism failed, and he crashed into a pole. *Id*. at p. 4. Plaintiff suffered a severe leg injury which resulted in a below the knee amputation when, contrary to his training and product warnings, his left leg was outside of the operator compartment. *Id*. Plaintiff asserts claims against Crown under theories of (1) general negligence (including his premises liability, failure to warn, improper supervision, and improper maintenance/inspection claims, among others); (2) products liability – manufacturing defect; (3) products liability – design defect; (4) negligent/faulty maintenance; and (5) negligent/faulty repair work. *Id*. at p. 4-7.

Plaintiff proffers Jason Kerrigan, Ph.D. to opine that the Crown RC5500 stand-up rider forklift was defective in design because of the forklift's open operator compartment and the lack of an operator backrest sensor. *Id*. at p. 11-32. Dr. Kerrigan opines that the subject truck should be equipped with some type of enclosure or door and some type of backrest sensor. *Id*. Dr. Kerrigan is not qualified to render any opinions regarding any proposed design alternative, and all of his opinions lack the requisite foundation and specificity for admissibility. Accordingly, Dr. Kerrigan's design opinions amount to nothing more than rank speculation and inadmissible *ipse dixit* and should be excluded. Further, Dr. Kerrigan admitted that he has not performed any biomechanical analysis and, therefore, any of his opinions regarding how the accident occurred and regarding how Plaintiff's left foot or left leg came out of the operator compartment should be excluded as well.

## II.   BACKGROUND

Crown incorporates herein by reference the Background Section (Section II) of its Memorandum of Law in Support of its Motion for Summary Judgment. *See* Dkt. No. 78.

### III.    PLAINTIFF'S LIABILITY EXPERT JASON KERRIGAN, PH.D.

To support his design claims against Crown, Plaintiff designated two retained expert witnesses, one being Jason Kerrigan, Ph.D. On April 30, 2024, Dr. Kerrigan submitted an expert report, which summarizes his opinions as to the design of the Crown RC5500:

- "A physical door eliminates the chance that a forklift operator could place any of their limbs outside the running lines of the forklift and in harm's way. If there was a physical barrier, door or otherwise, covering that occupant compartment opening, Mr. Sneed would not have been able to put his left foot out and his injury would not have occurred."

- "In the Crown forklift at issue, an operator's use of the backrest is part of the operator's operating position. Yet, the small "hip return" curvature of back rest provides only minimal restraint to the occupant, and the backrest does not have a sensor that could function like the brake pedal to ensure that the occupant is in a proper position (both feet on floor, both hands on controls, and back pushing on the backrest) for forklift operation. Such a backrest sensor could also have been easily included in the design as another safety precaution to lockout machine function and apply braking without sufficient pressure or contact on the backrest."

*Id.* at p. 17 and 20.

### IV.    LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT OPINION TESTIMONY

This Court is the gatekeeper for the admissibility of all expert testimony. Fed. R. Evid. 104(a); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999). Specifically, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). Under Rule 702, courts may admit opinion testimony by qualified experts if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 589-95; *U.S. v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). Rule 702 has two major requirements. First, it requires that a witness must be

"qualified as an expert by knowledge, skill, experience, training, or education" before being permitted to testify as an expert.  Fed. R. Evid. 702.  Courts look to formal education and training as well as experiential background in determining whether a person is qualified as an expert.  *See, e.g., U.S. v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013).

The second major requirement of Rule 702 is that the expert must testify to "scientific, technical, or other specialized knowledge" that will "assist the trier of fact."  This is where the United States Supreme Court's landmark opinion in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) comes into play.  In *Daubert*, the Court held that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable.  *Id*. at 589.  Pursuant to FRE 702, *Daubert* charged federal courts with the "gatekeeping role" of assessing proposed scientific evidence to determine **(1) scientific reliability—**"whether the reasoning or methodology underlying the testimony is scientifically valid"; and **(2) relevance or fit—**"whether that reasoning or methodology properly can be applied to the facts in issue."  *Id*. at 592-93.

With respect to the **reliability prong** of *Daubert*, the Supreme Court noted that "the adjective 'scientific' [in FRE 702] implies a grounding in the methods and procedures of science.  Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation."  *Id*. at 590.  Thus, "in order to qualify as 'scientific knowledge' an inference or assertion must be derived by the scientific method.  Proposed testimony must be supported by appropriate validation—*i.e.* 'good grounds,' based on what is known."  *Id*.  Making this assessment, the Supreme Court in *Daubert* identified the following non-exclusive factors the trial court should consider: (1) whether the theory "can be (and has been) tested"; (2) whether it "has been subjected to peer review and publication"; (3) "the known or potential rate of error"; (4) "the

existence and maintenance of standards controlling the techniques operation"; and (5) whether the theory has "[w]idespread acceptance" in the relevant scientific community." *Id*. at 593-94.

Another significant factor to be considered is whether the expert is proposing to testify about matters growing naturally and directly out of research conducted independent of litigation, or whether he has developed his opinions expressly for the purpose of testifying. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*"). That an expert testifies based on research he has conducted independent of litigation "provides important, objective proof that the research comports with the dictates of good science." *Id*. In considering the reliability of an expert's opinion, it is also critical that the expert be willing to offer the same opinions irrespective of whether they are testifying in a court of law or engaged in research independent of litigation. If an expert fails to employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" then it is inherently suspect. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

With respect to the **relevance prong** of *Daubert*, FRE 702 provides that the expert testimony must "assist the trier of fact". The Supreme Court interpreted this language to require that the proposed expert testimony have a "valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. Stated differently, the expert's proposed scientific testimony must "fit" the specific facts of the plaintiff's case, and the Court must determine whether the proffered expert testimony is sufficiently tied to the facts in issue that it will aid the jury. *Id*. at 591 (stating the district court's "gatekeeping role" requires ensuring that the expert testimony "is relevant to the task at hand.").

5

The proponent of the expert testimony must prove by a preponderance of the evidence that the expert's opinions are relevant, scientifically reliable, and result from an application of the scientific method. *Daubert*, 509 U.S. at 589-91; *Moore*, 151 F. 3d at 276.

V.  **ARGUMENT**

    A.  <u>Dr. Kerrigan is Not Qualified By Education or Experience To Render Opinions on the Design of a Forklift or a Stand-Up Rider Lift Truck. Thus, His Opinions Should Be Excluded in Their Entirety.</u>

Pursuant to FRE 702, when determining whether to admit the testimony of an expert, the Court must first examine who the proposed expert is: does he/she fall within the traditionally known fields of learning and expertise such as engineering or medicine, and does he/she possess the knowledge, skill, experience, training, or education so that he/she can be qualified as an expert. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence § 702*[04] (1998). The Court must gauge "whether the witness's qualifying training or experience, and resultant specialized knowledge, are sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact." *U.S. v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 1996) (citing *Daubert*). The trial court may thus properly exclude the testimony of any witness as an expert where that person is unable to demonstrate sufficient training or experience in the field for which he has sought to qualify as an expert.

Jason Kerrigan, Ph.D. is a Professor of Mechanical and Aerospace Engineering at the University of Virginia. *See* App. at p. 39. He also currently serves as the Director of the Center for Applied Biomechanics ("CAB") which is housed within the University of Virginia. *Id*. The website for the CAB describes its purpose as "one of the world's leading research groups in the

field, using state-of-the-art equipment to analyze the intricacies of how the human body responds to injury."[1]

Consistent with the mission of the CAB, Dr. Kerrigan's primary career interests have been in the field of crash biomechanics, and he has undertaken numerous research studies for automobile manufacturers such as Toyota, Honda, and Hyundai concerning occupant protection in rollover crashes and other studies related to the impact of crash events on the human body. *See* App. at p. 44 (Research Interests) and p. 51-53 (Funding: External Awards). At no time, however, has Dr. Kerrigan's research—or the work of the CAB under his direction—ever involved the consideration of how a forklift and/or stand-up rider lift truck should be designed. *Id*. at p. 39-54; *see also* p. 85, lines 19:20-25; *see also* p. 87, lines 27:1-5.

In fact, Dr. Kerrigan has little to no experience in the actual field of design or in the field of forklifts in general. He admitted at his deposition that he has:

- Never been a member of any organization or safety standards committee that deals with forklift safety or forklift design issues; (App. at p. 85, lines 19:16-19; 21:10-15)

- Never been retained by any company or manufacturer that manufactures forklifts to provide design consultation or expertise regarding forklift safety or forklift design issues; (App. at p. 85, lines 19:20-25; *see also* p. 87, lines 27:1-5)

- Never been retained by any safety organization such as the National Safety Council or OSHA to consult regarding forklift safety or forklift design issues; (App. at p. 85, lines 20:1-5)

- Never been asked by any standard-setting organization to provide expertise regarding forklift safety or forklift design issues; (App. at p. 85, lines 21:10-15)

- Never been responsible for making design decisions regarding the design of a stand-up rider forklift; (App. at p. 86, lines 25:24 – 26:2)

- Never designed any component part of a stand-up rider forklift; (App. at p. 87, lines 26:3-5)

---

[1] *See* https://engineering.virginia.edu/centers-institutes/center-applied-biomechanics (last visited July 9, 2024).

- Never worked for a company that designs, builds, or manufactures stand-up rider forklifts; (App. at p. 87, lines 26:6-8)

- No patents that relate to forklifts; (App. at p. 87, lines 27:6-8)

- Never developed warnings or instructional manuals or operational manuals regarding forklift operation; (App. at p. 87, lines 27:9-12)

- Never provided any litigation testimony regarding design issues related to an automobile; (App. at p. 88, lines 30:23 – 31:1)

- Never been employed by a company that manufactures, designs, or builds mechanical equipment as a design engineer; (App. at p. 88, lines 33:14-17) and

- Authored no publications that deal with forklift operation, safety, or design issues. (App. at p. 85, lines 19:4-15).

Notwithstanding Dr. Kerrigan's complete lack of any formal qualifications or practical experience in the design of any forklift or stand-up rider lift truck, as well as his own admissions that he's never designed any component part or any aspect of a stand-up rider forklift, Dr. Kerrigan nevertheless proposes to testify in this case that the design of the Crown RC5500 should be changed by adding an operator compartment door or a backrest sensor. FRE 702 and the case law interpreting this Rule explicitly prohibit the admission of such testimony.

An expert witness's testimony should be excluded if the district court "finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999); *see also Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."). Testimony that falls outside of the proposed expert's "realm of expertise" must be excluded. *See Winzer v. Kaufman County*, 2016 WL 11472367 at *4 (N.D. Tex. Aug. 10, 2016). For instance, in *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224 (5th Cir. 2007), the court ruled that the plaintiff's designated tire expert was

properly excluded from testifying at trial that a tire was faulty in design or manufacture. *Id*. at 226-27.  The court noted that the expert "had never worked in or studied the tire industry in any capacity, nor had he ever testified as a tire expert", *id.* at 226, "has never been employed in any capacity dealing with the design or manufacture of tires", "has never published any articles regarding tires nor has he ever examined a tire professionally prior to this litigation", and "[h]is only experience with tires is as a consumer." *Id*. at 227.  That is the case *sub judice*.  Dr. Kerrigan has never worked for a company that designs, builds, or manufactures stand-up rider forklifts (App. at p. 87, lines 26:6-8), has never designed any component part of a stand-up rider forklift (App. at p. 87, lines 26:3-5), has never published any articles that deal with forklift operation, safety, or design issues (App. at p. 85, lines 19:4-15), and has never been responsible for making design decisions regarding the design of a stand-up rider forklift (App. at p. 86-87, lines 25:24 – 26:2).  His only experience is in a litigation context.

This Court recently excluded a proposed expert for his lack of qualifications to testify on a specific subject where the sponsoring party "proffer[ed] no education, training, or experience showing [the expert's] qualification to examine the weld in question and opine as to why it allegedly did not serve its intended purpose." *Nationwide Agribusiness Ins. Co. v. Varco Pruden Bldgs.*, 2020 U.S. Dist. LEXIS 253386 at *18-19 (N.D. Tex. Mar. 3, 2020).  Although the witness had a B.S. in civil engineering, work experience in structural engineering and building design, and had been working recently in root cause analyses for construction defect issues in concrete, steel, masonry and wood-frame structures, this Court opined that the expert lacked the qualifications and specialized knowledge of "metallurgy, welding engineering, or the welding process in general." *Id*. at *15.

Likewise, while Dr. Kerrigan is a mechanical and aerospace engineer, he has no education, training, or experience in the field of forklift design. He has never designed a forklift or any component part of a stand-up rider forklift. App. at p. 87, lines 26:3-5. He does not hold any patents involving the design of any stand-up rider forklift. App. at p. 87, lines 27:6-8. He has never conducted any academic research into the design of any stand-up rider forklift. App. at p. 85, lines 19:4-15. He has never been responsible for developing warnings, operator instructions, or training materials related to forklifts. App. at p. 87, lines 27:9-12. He has never published any articles on the design or safety of a stand-up rider forklift. App. at p. 85, lines 19:4-15. He has never been involved in the development of regulations regarding the design or operation of stand-up rider forklifts, including those published through ANSI. App. at p. 85, lines 20:1-5; lines 21:10-15. Accordingly, he is unqualified, and his opinions related to any proposed alternative design of the Crown RC5500 should be excluded at the outset under FRE 702.

      B. <u>Dr. Kerrigan's Design Opinions Should Be Excluded Because They Do Not Meet the Standards for Relevance And Reliability Required by FRE 702 and *Daubert*.</u>

Even if Dr. Kerrigan had the qualifications to offer "expert" design opinions in this case, that does not end the inquiry. As FRE 702 and *Daubert* make clear, the admission of expert testimony is proper only if the expert's scientific, technical, or other specialized knowledge will "help the trier of fact to understand the evidence or to determine a fact in issue" (i.e., relevance) and that it "is the product of reliable principles and methods" (i.e. reliability).

Dr. Kerrigan's opinions are based on his subjective belief and unsupported speculation, and are not supported by appropriate validation, and thus are unreliable. The Court should therefore exclude the following: (1) Dr. Kerrigan's opinion that the forklift was defectively designed and caused Plaintiff's injuries; (2) Dr. Kerrigan's opinion that his allegedly safer

alternative "concepts" would have prevented or reduced the risk of Plaintiff's injury in this accident; and (3) all biomechanical opinions by Dr. Kerrigan.

### 1. Dr. Kerrigan Does Not Establish a Safer Alternative Design But Merely Proffers "Concepts".

To assess whether an expert's scientific methodology is reliable, courts evaluate various factors, including: whether the expert's theory has been tested; whether the theory has been subjected to peer review; the known or potential rate of error for the particular scientific technique; whether the technique is generally accepted in the scientific community; and whether the technique unjustifiably extrapolates an accepted premise to reach an unfounded conclusion. *See Daubert*, 509 U.S. at 593–94; *Kumho Tire Co., Ltd*., 526 U.S. at 152; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Dr. Kerrigan's opinion that the forklift was defectively designed and caused Plaintiff's injuries is unreliable. It isn't based on any scientific methodology, let alone a reliable scientific methodology that passes the scrutiny of the *Daubert* standard.

Under Texas law, a products liability claim based on an alleged design defect requires proof that "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). A "safer alternative design" is a design "other than the one actually used," and that in reasonable probability:

> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility and
>
> (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Tex. Civ. Prac. & Rem. Code § 82.005(b).

Under Texas law, a products liability claim fails in the absence of evidence that the proposed alternative design would have prevented or reduced the risk of injury. *Casey v. Toyota Motor Eng'g & Mfg. N. Am. Inc.*, 770 F.3d 322, 331–333 (5th Cir. 2014). "Texas law expects that an alternative design be tested before a jury can reasonably conclude that the alternative would prevent or reduce the risk of injury." *Id.* at 333. And for testing to constitute evidence of the alternative design's superior safety, it must involve "similar forces and factors" as those in the subject accident. *Id*. at 332.

Regarding Dr. Kerrigan's proposed safer alternative design "concepts" for the Crown RC5500, he opines that "[a] physical door eliminates the chance that a forklift operator could place any of their limbs outside the running lines of the forklift and in harm's way. If there was a physical barrier, door or otherwise, covering that occupant compartment opening, Mr. Sneed would not have been able to put his left foot out and his injury would not have occurred." *See* App. at p. 20. Further, Dr. Kerrigan opines "an operator's use of the backrest is part of the operator's operating position. Yet, the small 'hip return' curvature of back rest provides only minimal restraint to the occupant, and the backrest does not have a sensor that could function like the brake pedal to ensure that the occupant is in a proper position (both feet on floor, both hands on controls, and back pushing on the backrest) for forklift operation. Such a backrest sensor could also have been easily included in the design as another safety precaution to lockout machine function and apply braking without sufficient pressure or contact on the backrest." *Id*. at p. 17.

Fatal to Dr. Kerrigan's proposed alternative design "concepts", he has provided nothing beyond speculation as to what type of operator compartment door or backrest sensor should be implemented on the Crown RC5500, how they would be manufactured and implemented on the Crown RC5500, and his proffered "concepts" provide no guidance to the trier of fact. Dr. Kerrigan

has not and cannot provide any design details or show any reliable methodology regarding his untested and unengineered proffered "concepts".

First, regarding his backrest sensor "concept", Dr. Kerrigan admitted that he has not developed any design drawings regarding where he would place a backrest sensor or what type of backrest sensor he would add to the Crown RC5500. *Id*. at p. 94-95, lines 117:23 – 118:2. Specifically, he testified that "I didn't try to come up with a specific design of anything [regarding the backrest sensor]." *Id*. at p. 95, lines 118:8-9. He has not developed any prototypes, mockups, nor performed any testing whatsoever regarding his backrest sensor "concept". *Id*. at p. 95, lines 118:13-20. In proffering his backrest sensor "concept", Dr. Kerrigan did not apply a reliable—or indeed any—methodology as required by *Daubert*. Accordingly, his backrest sensor alternative design opinions must be excluded.

Second, regarding his operator compartment door "concept", Dr. Kerrigan also admitted that he has "not created any drawings of any designs [regarding compartment doors]." *Id*. at p. 95, lines 120:1. He further testified that he has not conducted any testing on a forklift equipped with a door. *Id*. at p. 95, lines 120:12-15. Specifically, he testified that "I haven't done any testing of any doors at all in this scenario here." *Id*. at p. 95, lines 121:11-12. Dr. Kerrigan further admitted that:

- He has not determined the weight of the door he would add to the Crown RC5500; (*Id*. at p. 95, lines 121:17-19)

- He has not determined whether the door would be spring-loaded or latched; (*Id*. at p. 95, lines 120:4-121:8) and

- He has not determined the tension of the spring that would be required to keep the door shut (*Id*. at p. 95, lines 121:20-23).

As with his backrest sensor "concept", Dr. Kerrigan's door "concept" is completely speculative and provides no guidance to the trier of fact, and thus should be excluded.

### 2. Dr. Kerrigan Has Not Testified or Opined That His Proffered Concepts Would Have Prevented This Accident.

The crux here is whether Dr. Kerrigan has reliably established that an operator compartment door or a backrest sensor are safer alternative designs and, had either of them been installed, *would have prevented* or *significantly reduced the risk* of Plaintiff's injuries under the specific circumstances of this accident. Under Texas law, a products liability claim fails in the absence of evidence that the proposed alternative design *would have prevented* or *reduced the risk* of this injury. *Casey*, 770 F.3d at 331–333 (emphasis added). Fatal to Dr. Kerrigan's proposed alternative design "concepts", he has provided nothing beyond speculation to show how an operator compartment door or a backrest sensor *would have prevented* Plaintiff's lower left leg crush injury.

Regarding the subject accident itself, Dr. Kerrigan admitted that he has no sketches, calculations, or measurements of the accident scene or the subject forklift and, in fact, has never even been to the accident scene. *Id*. at p. 89, lines 44:7-25; *see also id*. at p. 90, lines 79:10-15. He concedes that he has not conducted a reconstruction of Plaintiff's accident and has not even attempted to calculate the accelerations or speed of the forklift prior to the accident. *Id*. at p. 91, lines 85:11-24. He also concedes that he is not even sure when Plaintiff began to "plug" or use the service brake because he "cannot see in the video when he took his foot off of the foot pedal brake." *Id*. at p. 92, lines 87:19-23; 89:10-25.

Further, regarding his backrest sensor "concept", Dr. Kerrigan admitted that a backrest sensor would not have prevented the subject accident. He testified "I would say that if the backrest sensor was there I still think that some way that prevents the occupant from placing their extremities outside the running lines of the forklift while it's moving would be required." *Id*. at p. 94, lines 116:21-24. Also, Dr. Kerrigan's backrest sensor opinion is irrelevant and entirely

speculative because Plaintiff testified that part of his back was against the backrest immediately before the accident. *Id*. at p. 100, lines 93:5-6. Dr. Kerrigan's backrest sensor "concept" is completely speculative and he provides no opinion as to whether this "concept" would have prevented Plaintiff's injuries here.

Next, regarding his operator compartment door "concept", when asked whether, if a manufacturer added a door to a stand-up forklift, lower left leg injuries would still occur, Dr. Kerrigan testified "[s]ure. Anything could happen." *Id*. at p. 96, lines 157:21 – 158:1. Dr. Kerrigan's backrest sensor and operator compartment door "concepts" are completely speculative and provide no opinion as to whether these "concepts" would have prevented Plaintiff's injuries here.

Dr. Kerrigan's design and causation opinions are riddled with assumptions and speculation. Two Fifth Circuit decisions are instructive here. In *Casey,* the court affirmed the exclusion of a design-defect expert, Renfroe, who lacked a sufficient basis to conclude that using a stronger material for a side curtain airbag would have prevented a driver from being ejected during an accident. 770 F.3d at 332-33. Renfroe had done no testing to support his conclusion. *See id.* at 332. Significantly, too, the expert did not explain why the result would have differed "beyond simply asserting that the air bar would have stayed inflated in this accident." *See id.* Instead, Renfroe attempted to rely on tests performed during the application for a patent. *See id.* But those tests "did not involve similar forces and factors" and "were divorced from the conditions of this accident." *Id.* at 332-33.

Later, in *Sims,* the Fifth Circuit affirmed the exclusion of an expert, Wallingford, who opined that the lack of a shield caused a vehicle's fuel tank to rupture. *See* 839 F.3d at 406-08. Wallingford reviewed photos and reports from the accident and "employed 'the laws of physics'

and his own experience and education" to form his opinion. *Id.* at 404. Quoting *Casey,* the *Sims* court noted an alternative design must be tested to determine if it would prevent or reduce the risk of injury. *See id.* at 407 & n.46. And this "testing can be as simple as applying math and physics to establish the viability of a design." *Id.* at 407. But Wallingford had no such basis for his opinions. Instead, he tried to extrapolate his conclusion from the opinions of a rebuttal expert who testified that law enforcement vehicles, which were often involved in collisions exceeding 100 miles per hour, were upgraded with fuel tank shields. *Id.* at 408. The Fifth Circuit found this methodology unreliable because the rebuttal expert's testimony was too non-specific to lend the requisite support.

Dr. Kerrigan did even less here. He has not met his obligation under *Daubert* to identify data supporting his opinions that either an operator compartment door or a backrest sensor were feasible or that either would have changed the outcome in *this* accident. He simply describes vague alternative design "concepts", and made no attempt to connect his opinions to existing data, which is classic inadmissible *ipse dixit*. *See Kumho Tire,* 526 U.S. 137, 157 (1999) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (quoting *Joiner,* 522 U.S. at 146). Thus, Dr. Kerrigan's opinions regarding design defects, causation, and allegedly safer alternative designs should be excluded in their entirety.

### 3. Dr. Kerrigan Biomechanical Opinions, If Any, Should Be Excluded.

Dr. Kerrigan holds himself out to be an expert in the study of injury biomechanics. *See* App. at p. 83, lines 7:2-7. While he is the Director and Principal Investigator at the University of Virginia Center for Applied Biomechanics, *id*. at p. 84, lines 15:16-18, he did no biomechanical analysis in this case:

16

| | |
|---|---|
| Q | Have you done such a biomechanical analysis in this case? |
| A | Sir, I haven't. In previous cases I looked in detail at the injuries sustained and tried to understand how the foot was positioned, how it was loaded, whether or not it was the ankle or leg or the foot. In this case I did not do that. I simply reviewed the injuries documented in the medical records there. And I reviewed the video of his deposition to create my report. But I didn't have any – I didn't try to figure out exactly how his foot was positioned, what part of the forklift interacted with it in this case. |

*Id.* at p. 93, lines 98:2-14. Accordingly, Crown moves to exclude any and all biomechanical opinions from Dr. Kerrigan at trial, including any opinions regarding how the accident occurred and any opinions regarding how Plaintiff's left foot or left leg came out of the operator compartment.

## VI.   CONCLUSION

Defendant Crown Equipment Corporation moves for an Order excluding the opinions of Plaintiff's designated liability expert Jason Kerrigan. Dr. Kerrigan does not possess the requisite experience or qualifications to offer expert opinions in the field of forklift or stand-up rider lift truck design. For this reason alone, his testimony should be excluded. Further, even if this Court were to find Dr. Kerrigan qualified to offer some type of "expert" testimony, his opinions must nevertheless be excluded because they do not meet the standards for relevance and reliability as required by FRE 702 and the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Dated: July 15, 2024

By:    /s/ *Pryce G. Tucker, Esq.*
Pryce G. Tucker, Esq. (TX No. 24003091)
SCHOUEST, BAMDAS, SOSHEA, BENMAIER & EASTHAM PLLC
5956 Sherry Lane, 20th Floor
Dallas, Texas 75225
Tel.: (945) 468-2442
ptucker@sbsb-eastham.com

Thomas J. Cullen, Jr., Esq. (admitted *pro hac vice*)
NELSON MULLINS RILEY & SCARBOROUGH LLP
1222 Demonbreun St., Suite 1700
Nashville, TN 37203
Tel.: (615) 664-5319
Thomas.cullen@nelsonmullins.com
*Attorneys for Defendant Crown Equipment Corporation*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15th day of July 2024, a copy of the foregoing was served by electronic mail to all counsel of record.

                                              */s/ Pryce G. Tucker, Esq.*
                                              Pryce G. Tucker, Esq.
                                              *Attorney for Crown Equipment Corp.*