IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEAVRIN SNEED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-743-K |
| | § | |
| CROWN EQUIPMENT | § | |
| CORPORATION and TARGET | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Crown Equipment Corporation ("Crown") has filed a Motion for Summary Judgment. *See* Dkt. No. 77.

Plaintiff Deavrin Sneed filed a response, *see* Dkt. No. 82, and Crown filed a reply, *see* Dkt. No. 94.

United States District Judge Ed Kinkeade has referred this motion to the undersigned United States Magistrate Judge for findings, conclusions, and recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 108.

For the reasons explained below, the Court should grant Crown's Motion for Summary Judgment in its entirety [Dkt. No. 77].

**Background**

Prior orders have documented the background of this case. *See* Dkt. No. 111. The information that follows is repeated here for reference and supplemented with information relevant to the issues now presented before the Court.

-1-

This is a products liability case arising from a workplace incident involving a Crown RC5500 Series stand-up rider forklift (the "subject forklift").

Crown's RC5500 stand-up, side-stance forklifts are used to move palleted materials in warehouse facilities. *See* Dkt. No. 78-1 at 13. When operating the forklift, the driver stands sideways with their hands on the controls while leaning against a backrest. *See id.* at 23. And they use their feet to operate the service brake and "power-on pedal." *See id.* at 24-25. The operator compartment is open (i.e., there is no door). *See id.* at 12.

Operators use the multi-function handle to control travel direction and speed. *See id.* at 27. And they can stop the forklift by braking or using a technique called "plugging," in which the operator pulls or pushes the multi-function handle in the opposite direction of the direction of travel to slow and stop the forklift. *See id.* at 25-27.

Plaintiff Sneed alleges that, as he was loading and unloading pallets with the subject forklift at a Target Distribution Center, it malfunctioned and accelerated at a high rate of speed; the brake mechanism failed; and he crashed into a pole, resulting in severe injuries, including a partial leg amputation. *See* Dkt. No. 28 at 2-3.

Sneed asserts claims against Crown under theories of (1) product liability – design defect; (2) product liability – manufacturing defect; (3) general negligence (including premises liability, failure to warn, improper supervision, and improper maintenance/inspection claims, among others); (4) negligent/faulty maintenance; and (5) negligent/faulty repair work. *See id.* at 4-7. Sneed also seeks punitive damages for

malice or gross negligence. *See id.* at 5.

Sneed retained and designated Jason Kerrigan, Ph.D., and Robert Bullen, P.E., J.D., as expert witnesses to testify regarding purported design defects concerning the subject forklift. *See* Dkt. No. 69. Dr. Kerrigan and Mr. Bullen both submitted expert reports including alleged alternative designs. *See* Dkt. Nos. 79-1 at 11-32 & 80-1 at 24-53.

Crown moved to exclude both opinions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). *See* Dkt. Nos. 79 & 80. The Court subsequently granted both motions. *See* Dkt. No. 111.

The undersigned turns to Crown's Motion for Summary Judgment [Dkt. No. 77].

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of

a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal

-4-

quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

"[W]hen the moving party has carried its burden under [Federal Rule of Civil

Procedure] 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## Analysis

### I. <u>Sneed's Design Defect Claim</u>

#### A. <u>Crown is Entitled to a Presumption of Non-liability under Texas Law</u>

Crown contends that summary judgment should be granted on Sneed's design defect claim because it has established that it is entitled to a presumption of non-liability under Section 82.008 of the Texas Civil Practice and Remedies Code. *See* Dkt.

No. 78 at 15; Tex. Civ. Prac. & Rem.Code § 82.008.

The Texas Legislature enacted Section 82.008 in response to "a finding that manufacturers and sellers were being held liable in products liability cases even though the products at issue complied with all applicable federal safety standards." *Am. Honda Motor Co. v. Milburn*, 696 S.W.3d 612, 621 (Tex. 2024) *(*quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 869 (Tex. 2014)).

"Section 82.008 entitles a product manufacturer to a presumption that it is not liable for injuries caused by its product's design if the manufacturer establishes that (1) the design complied with mandatory federal safety standards or regulations, (2) the standards or regulations were applicable to the product at the time of manufacture, and (3) the standards or regulations governed the product risk that allegedly caused the harm." *Id.* (citing Tex. Civ. Prac. & Rem.Code § 82.008(a)).

But this presumption is rebuttable. A claimant may rebut the presumption by establishing either that "the mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage" or that "the manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action." *Id.* (citing Tex. Civ. Prac. & Rem.Code § 82.008(b)).

Whether the presumption applies is a question of law. *See Kia Motors* 432 S.W.3d at 874 (illustrating the principle that whether the statutory presumption is

applicable is a question of law); *accord Kim v. Am. Honda Motor Co., Inc.*, 86 F.4th 150 (5th Cir. 2023) (adhering to the Texas Supreme Court's holding in *Kia*).

And, so, the undersigned turns to the presumption's applicability: whether the Crown RC5500 Series stand-up rider forklift (1) complied with mandatory federal safety regulations that (2) were applicable to it at the time of its manufacture and (3) governed the product risk that allegedly caused the harm.

"Determining a product's compliance with identified, mandatory safety regulations that were applicable to the product at the time of manufacture will typically be a straightforward affair with little room for disagreement." *Am. Honda Motor Co.*, 696 S.W.3d at 623.

Crown asserts that the subject forklift's design complied with all mandatory federal safety standards and regulations and, specifically, the American National Standards Institute/Industrial Truck Standards Development Foundation's ("ANSI/ITSDF") B56.1 "Safety Standard for Low Lift and High-Lift Trucks" (the "B56.1 Safety Standard"). *See* Dkt. No. 78 at 16. The Occupational Health and Safety Administration ("OSHA") has adopted the B56.1 Safety Standard's requirements. *See* 29 C.F.R. § 1910.178(a)(2) (2006).

Crown contends that the 2016 version of the B56.1 Safety Standard was applicable to the manufacture of the subject forklift; that the standard covers the relevant functions and/or components in this case; and that it undisputedly complies with the required standards. *See* Dkt. No. 78 at 16; *see also* Dkt. No. 78-1 at 75-78. Crown's Director of Product Safety, Ronald Grisez, opined in his expert report that

the subject forklift complied with the applicable standards. *See* Dkt. No. 78-1 at 63.

Sneed does not dispute whether the subject forklift complied with federal standards. *See* Dkt. No. 82 at 18 ("Crown's compliance with minimum safety standards does not absolve Crown of liability for gross negligence.").

And, so, Crown is entitled to the presumption of non-liability unless Sneed can rebut it by showing that the mandatory federal safety standards or regulations applicable to the subject forklift were inadequate to protect the public from unreasonable risks of injury or damage or that Crown, before or after marketing the subject forklift, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue.

Sneed contends that he has "successfully rebutted the presumption" because he "has demonstrated that the safety standards applicable to the RC5500 were inadequate to protect the public from unreasonable risks" and "has provided clear evidence that Crown withheld or mispresented material information regarding the safety of the RC5500 to regulatory authorities." Dkt. No. 82 at 10-11

Sneed points to the testimony of his designated experts – Dr. Kerrigan and Mr. Bullen – as evidence of the subject forklift's design flaws. *See id.* at 11. Sneed states tht "[t]heir analysis reveals significant safety concerns, such as the open operator compartment and inadequate optical sensors, which pose substantial risks to operators." *Id.*

But "a determination that an applicable federal safety standard is inadequate

to protect the public from unreasonable risks of injury requires something other than proof of a product's defective design." *Am. Honda Motor Co.*, 696 S.W.3d at 627.

Sneed proffers no evidence or specific details to support his assertion that the safety standards at issue were inadequate to protect the public. And, without "something other" than expert testimony regarding the subject forklift's purported design defects, Sneed cannot rebut the presumption.

Sneed also has not provided evidence that Crown withheld or misrepresented material information regarding the subject forklift's safety to regulatory authorities (such as ANSI/ITSDF and OSHA), or that they engaged in improper or erroneous decision-making in approving the applicable standards. *See Am. Honda Motor Co.*, 696 S.W.3d at 632 (finding that "no evidence was presented that [the regulatory authority] engaged in an improper or erroneous decision-making process in approving the regulation that authorized the detachable seat-belt system used in the [car]'s rear center seat, and no evidence was presented of post-approval developments that call the regulation's adequacy into question").

And, so, Sneed has not proffered support for either method to rebut the presumption.

And the Court should find that Crown is not liable on Sneed's design defect claim. *Accord Am. Honda Motor Co.*, 696 S.W.3d at 622 ("If the manufacturer establishes the presumption's applicability and the claimant fails to rebut it, the manufacturer is 'not liable' on the claim, and further inquiry into the claim's elements is immaterial.").

B. Sneed's Design Defect Claim is Not Supported by Reliable Expert Testimony

Crown also contends that it is entitled to summary judgment on Sneed's design defect claim because it is not supported by reliable expert testimony. *See* Dkt. No. 78 at 17-19.

To prevail on his design defect claim, Sneed must show that "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322 (5th Cir. 2014) (citing *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 82.005(a).

A safer alternative design means:

a product design other than the one actually used that in reasonable probability: (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

TEX. CIV. PRAC. & REM.CODE ANN. § 82.005(b).

Under Texas law, "expert testimony is generally encouraged if not required to establish a products liability claim." *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393 (5th Cir. 2016) (citing *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007)).

Further, "expert testimony is crucial in establishing that the alleged design defect caused the injury." *Id.* (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) (holding that expert testimony was required to establish causation in

products liability case, because "[a] lay juror's general experience and common knowledge do not extend to whether design defects such as those alleged in this case caused releases of diesel fuel during a rollover accident").

The undersigned agrees with Crown that "the complex mechanical nature of the forklift and its components as critiqued in the opinions proffered ... regarding the open operator compartment, the operator's backrest, the optical sensors, and the control module reprogramming on which [Sneed]'s claims focus, are such that an average juror cannot be expected to make an informed assessment of the forklift's design or any proposed alternative designs without expert testimony." Dkt. No. 78 at 18; *see Nissan Motor Co. v. Armstrong,* 145 S.W.3d 131, 137 (Tex. 2004) (holding, in a case where the plaintiff alleged and the jury found design, manufacturing, and marketing defects, that "[i]n [prior] cases, it was not enough that a vehicle accelerated when claimants swore they had done nothing. Instead, we have consistently required competent expert testimony and objective proof that a defect caused the acceleration. ... These requirements are not peculiar to unintended acceleration cases.").

Sneed proffers Dr. Kerrigan and Mr. Bullen's expert opinions regarding the subject forklift's purportedly defective design and Crown's liability. *See* Dkt. No. 69; *see also* Dkt. Nos. 79-1 at 11-32 & 80-1 at 24-53.

Dr. Kerrigan suggests that the subject forklift be equipped with an enclosure or door and a backrest sensor. *See* Dkt. No. 79-1 at 11-32. And Mr. Bullen suggests that the subject forklift be equipped with a "more robust" optical switch and that the control module should be reprogrammed to respond to a hypothetical accelerator

sensor error by automatically braking. *See* Dkt. No. 80-1 at 24-53.

But, as noted above, the Court granted Crown's motions to exclude Dr. Kerrigan and Mr. Bullen's opinions under Federal Rule of Evidence 702 and *Daubert*. *See* Dkt. No. 111.

The Court found that both opinions were unreliable and failed the *Daubert* analysis because the experts' proposed design alternatives were untested, based on unsupported speculation, and amounted to *ipse dixit*. *See id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999) (nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert; cleaned up).

Without admissible expert testimony, Sneed cannot show that the subject forklift's design was defective under Texas law. And Crown would be entitled to judgment as a matter of law.

But to the extent that the Court allowed Dr. Kerrigan and Mr. Bullen's testimony, it would still be insufficient to establish Crown's liability.

For a design defect to exist, there must be a safer alternative design. *See Hernandez v. Tokai Corp.,* 2 S.W.3d 251, 258 (Tex.1999) (holding that a safer alternative design is a necessary, but not sufficient, element of liability under both Texas law).

"Texas law expects that an alternative design be tested before a jury can reasonably conclude that the alternative would prevent or reduce the risk of injury." *Casey*, 770 F.3d at 332. And this testing "can be as simple as applying math and

physics to establish the viability of a design." *Sims*, 839 F.3d at 407.

As the Court discussed in its Memorandum Opinion and Order, *see* Dkt. No. 111, both experts admittedly did not conduct testing with their proposed design alternatives to show that they were feasible or would have changed the outcome of the incident at issue.

And, so, the Court found that without support from appropriate engineering work, product development, or testing, Dr. Kerrigan and Mr. Bullen's proposed design alternatives could not be classified as safer alternative designs but rather amounted to "speculative concepts." *See id.* at 20, 27. *C.f.*, *Vallee v. Crown Equip. Corp.*, No. 22-30053, 2023 WL 2964407 (5th Cir. Apr. 14, 2023) (affirming district court's granting defendant summary judgment under Louisiana law because plaintiff failed to sufficiently identify a specific alternative design for the forklift that could have prevented plaintiff's injuries).

Because Sneed cannot show that a safer alternative design exists, his design defect claim also fails for this reason.

And, so, the Court should find that Crown is entitled to summary judgment on the design defect claim.

## II.    **Sneed's Manufacturing Defect Claim**

Crown contends that it is entitled to summary judgment on Sneed's manufacturing defect claim because Sneed has failed to identify a specific manufacturing defect. *See* Dkt. No. 78 at 19-20.

Under Texas law, "[a] manufacturing defect exists when a product deviates, in

its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous. *Cooper Tire & Rubber Co. v. Mendez,* 204 S.W.3d 797, 800 (Tex. 2006) (quoting *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004)).

And, so, Sneed bears the burden of proving that the subject forklift was defective when it left Crown's hands and that the defect was a producing cause of his injuries. *See id.*

To prove a manufacturing defect under Texas law, a specific defect must be identified by competent evidence and other possible causes must be ruled out. *Ledesma*, 242 S.W.3d at 42 (cleaned up).

"Texas law does not generally recognize a product failure or malfunction, standing alone, as sufficient proof of a product defect." *Id.* Rather, the deviation from design that caused the injury must be identified. *See id.* And "[r]equiring proof of a deviation from manufacturer specifications or planned output also comports with our recognition that expert testimony is generally encouraged if not required to establish a products liability claim." *Id.* (cleaned up); *see also BIC Pen Corp. v. Carter*, 346 S.W.3d 533 (Tex. 2011) ("Expert testimony is generally required in manufacturing defect cases to prove that the specific defect causes the accident;" cleaned up).

Crown argues that Sneed has "put forth no evidence, factual or expert, of a manufacturing defect" and "[n]either of [his] liability experts opine that the subject RC5500 deviated from Crown's intended design." Dkt. No. 78 at 20.

In response, Sneed asserts that he "has identified specific manufacturing

defects in the RC5500 forklift, supported by both factual and expert evidence," including "improper adjustments and failures in the assembly process that compromised the forklift's safety and performance." Dkt. No. 82 at 11. He adds that this evidence "demonstrates that these manufacturing defects were present at the time the RC5500 left Crown's control." *Id.*

But after reviewing the summary judgment evidence, including Sneed's appendix in support of his response, *see* Dkt. No. 82-1, the undersigned agrees with Crown that Sneed "simply states" that he has identified such manufacturing defects without providing evidence (such as, expert testimony) to support his contention.

Sneed's liability experts – Dr. Kerrigan and Mr. Bullen – provide their criticisms regarding the subject forklift's design, rather than testimony concerning a deviation from Crown's intended design. *See generally* Dkt. Nos. 79-1 at 11-32 & 80-1 at 24-53.

Because Sneed cannot identify a specific manufacturing defect, his manufacturing defect claim fails.

Crown is entitled to summary judgment on the manufacturing defect claim.

### III.    Sneed's Claims for Negligent/Faulty Maintenance and Repair Work

Crown contends that it is entitled to summary judgment on Sneed's claims for negligent/faulty maintenance and repair work because Sneed has failed to identify a specific negligent act which caused his injuries and has not established the requisite standard of care of care or breach. *See* Dkt. No. 78 at 20-23.

Texas state courts treat negligent maintenance claims in the same manner as

ordinary negligence claims. *See Sanchez v. Swift Transportation Co. of Arizona, LLC*, No. 15-cv-00015-RAJ, 2016 WL 10587127, at n.1 (W.D. Tex. Oct. 4, 2016) ("Texas courts do not recognize the elements of an independent negligent maintenance cause of action against a motor carrier. Rather, Plaintiffs' assertion of negligent maintenance is nothing more than a direct liability claim … for ordinary negligence.").

Under Texas law, the elements of a negligence claim are: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately caused by the breach. *See Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008); *Nabors Drilling, USA, Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).

Crown contends that Sneed has not established the breach and causation elements. *See* Dkt. No. 78 at 21.

In support of its contention, Crown states that Sneed

testified that he performed a pre-shift inspection of the subject Crown RC5500 on the day of his accident and found that the plugging, the service brake, the forward and reverse travel, and the steering were all working properly. He further testified that just five minutes before the accident, the steering, plugging, and braking were all still working properly. He admitted that if he felt there was any safety issue with the subject RC5500 that day, he would not have operated it. As such, Plaintiff cannot establish that there were any problems with the operation of the RC5500 before his accident, let alone that Crown was negligent in performing maintenance or repairs (i.e., breach) on the subject Crown RC5500 which proximately caused Plaintiff's injuries.

*Id.* at 21-22 (cleaned up).

And Crown asserts Sneed has provided "no expert opinions regarding Crown's alleged negligent maintenance or repair" of the subject forklift. *Id.* at 22.

In response, Sneed contends that he "has clearly established that Crown had several duties related to maintenance, inspection, and operation of the Crown RC5500 forklift, and Crown's failure to meet these duties constitutes a breach that directly led to [Sneed]'s injuries." Dkt. No. 82 at 15

Sneed states that the

> [e]vidence shows that Crown personnel were responsible for regular maintenance and inspection of the forklifts to ensure their safe operation. Plaintiff's expert testimony, along with maintenance records, highlights that Crown failed to adhere to the requisite standard of care. Specifically, Plaintiff has identified that improper adjustments and failure to properly inspect and maintain the forklift contributed to the accident.

*Id.* at 15-16.

"Expert testimony is necessary to establish the applicable standard of care 'when the alleged negligence is of such a nature as not to be within the experience of the layman.'" *Memc Pasadena, Inc. v. Goodgames Indus. Sols., LLC*, No. 4:13-cv-599, 2015 WL 9259088 (S.D. Tex. Dec. 18, 2015) (quoting *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004); *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982)).

And, as Crown correctly asserts, the maintenance and repair of a forklift like the one at issue here is not within the experience of the ordinary person.

And, so, Sneed must present expert testimony to establish the applicable standard of care.

But he has failed to do so here.

To the extent that Sneed's proffered expert testimony "highlights that Crown

failed to adhere to the requisite standard of care," Dr. Kerrigan did not discuss maintenance or repair issues in his report. *See generally* Dkt. No. 79-1 at 11-32.

And Mr. Bullen stated that,

> according to Crown Work Order PM361793, Crown personnel had performed maintenance on the subject machine on December 9, 2022 which included cleaning the unit, removing covers and blowing it off [and] [w]hen asked about this, the Crown technician testified that he was not sure what dust or debris had to do with the operation of the machine.

Dkt. No. 80-1 at 46.

Mr. Bullen's testimony falls short of establishing the requisite standard of care because it fails to explain how Crown's maintenance was improper or what its personnel should have done in this scenario.

And Sneed cannot identify a specific negligent act because, as Crown contends, there were no operational problems with the subject forklift before the accident. *See* Dkt. No. 78 at 21-22.

And, so, because Sneed has not shown the applicable standard of care and how Crown's conduct deviated from it and caused Sneed damages, his claims for negligent/faulty maintenance and repair work fail.

Crown is entitled to summary judgment on the negligent/faulty maintenance and repair work claim.

### IV.    **Sneed's Claim for General Negligence**

Crown contends that it is entitled to summary judgment on Sneed's claims for general negligence, which include his premises liability, failure to warn, improper supervision, and improper maintenance/inspection claims, because Sneed has failed

to identify a specific negligent act that caused his injuries and has not established the requisite standard of care of care or breach. *See* Dkt. No. 78 at 23-26.

The elements of a negligence claim under Texas law are: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately caused by the breach. *See Lane*, 529 F.3d at 565; *Nabors* Drilling, 288 S.W.3d at 404.

Sneed's allegations can be grouped into three negligence categories: (1) Crown had a duty to maintain the Target distribution center and supervise the operations within; (2) Crown had a duty to warn Sneed of the alleged hazards involved in the subject forklift's operation; and (3) Crown had a duty to maintain and inspect the subject forklift. *See* Dkt. No. 78 at 24-25.

Crown asserts that Sneed cannot establish that Crown had a legal duty to maintain and supervise the Target distribution center because it has not provided evidence that it "owned or occupied the premises, such that it had a legal duty of care to reduce or eliminate an unreasonable risk of harm posed by a condition on the premises." *Id.* at 25.

Crown contends that Sneed has "put forth no evidence, factual or expert, that it negligently failed to warn [Sneed] of any alleged hazards in the operation of the [subject forklift]." *Id.* And, as discussed above, it argues that Sneed has not established a legal duty to maintain the subject forklift because there were no operational problems before the accident. *See id.* And, so, Crown's position is that Sneed has not established any of the duties it alleges.

But, to the extent Crown had a legal duty, it asserts that Sneed has not

identified a specific negligent act or presented expert testimony to establish the standard of care. *See id.* at 25-26.

In response, Sneed contends that he "has clearly established that Crown had several duties related to maintenance, inspection, and operation of the Crown RC5500 forklift, and Crown's failure to meet these duties constitutes a breach that directly led to [Sneed]'s injuries." Dkt. No. 82 at 15.

Sneed asserts that he "has provided evidence that Crown was responsible for ensuring the safe operation of its forklifts within the premises [and] [t]his include[d] the duty to establish safety protocols and supervise the maintenance and operation of the equipment." *Id.* at 16.

He alleges that he "has demonstrated a duty to warn operators, including [Sneed], of known safety hazards associated with the Crown RC5500 [and] [d]espite being aware of the potential risks, Crown failed to provide adequate warnings or instruction that could have been prevented the accident." *Id.*

And, as discussed above, Sneed contends that the "[e]vidence shows that Crown personnel were responsible for regular maintenance and inspection of the forklifts to ensure their safe operation." *Id.*

As to the premises liability claim, Sneed has not shown that Crown was an owner or occupier of the premises to the extent that it owned a legal duty. *See CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97 (Tex. 2000) (a premises liability claim requires actual or constructive knowledge of a condition on the premises by the owner or occupier and that the condition posed an unreasonable risk of harm"). The absence of

a legal duty ends the inquiry into Sneed's premises liability claim, but Sneed also has not identified a specific act of negligence concerning Crown's maintenance and supervision of the Target distribution center.

And, so, Sneed's premises liability claim fails.

As to the duty to warn claim, Sneed has not presented evidence that challenges the adequacy of Crown's warnings. To the contrary, the summary judgment evidence shows that Crown warned about the risk of left-leg injury in its on-product warnings, manuals, and training materials. *See, e.g.*, Dkt. No. 78-1 at 20-33.

And, so, Sneed's duty to warn claim fails.

As discussed above, Sneed's duty to maintain and inspect claim fails because he has not identified a specific negligent act that caused his injuries. He testified there were no operational problems with the subject forklift before the accident. *See* Dkt. No. 78 at 25.

Sneed's claims for general negligence are also deficient because he has not presented expert testimony to establish the requisite standard care and show how Crown's conduct deviated from that standard and caused his injuries.

"In determining whether expert testimony is necessary to establish negligence, Texas courts have considered whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person." *FFE Transp. Servs.*, 154 S.W.3d at 91 (cleaned up).

And the maintenance/repair, inspection, and adequacy of warnings concerning the subject forklift involves specialized equipment and techniques unfamiliar to the

ordinary person. *Accord id.* (finding that components of a refrigerated trailer were specialized equipment and their proper inspection and maintenance concerned techniques unfamiliar to the ordinary person).

And, so, because Sneed has not shown the applicable standard of care and how Crown's conduct deviated from it and caused him damages, his general negligence claims fail.

Crown is entitled to summary judgment on the general negligence claims.

## V.    Sneed's Claim for Punitive Damages

Crown contends that it is entitled to summary judgment on Sneed's punitive damages claim because Sneed has failed to establish gross negligence or malice. *See* Dkt. No. 78 at 26-38.

To recover for gross negligence, a plaintiff must satisfy the elements of an ordinary negligence or premises liability claim and demonstrate clear and convincing evidence of an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others. *See Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 n.2 (5th Cir. 2014).

And "malice," as defined by the Texas Civil Practice and Remedies Code, means "a specific intent by the defendant to cause substantial injury to the claimant." TEX. CIV. PRAC. & REM. CODE § 41.001(7).

Sneed appears to seek punitive damages for gross negligence in the context of his design defect claim.

Sneed asserts that he "has presented clear and convincing evidence that

-24-

Crown's design of the RC5500 forklift involved an extreme degree of risk." Dkt. No. 82 at 17. And he argues that Crown was "fully aware" of the risks associated with the subject forklift's design and "consciously chose not to implement safer design alternatives" and that "this decision was made despite the foreseeability of severe injuries, demonstrating Crown's conscious indifference to the rights and safety of operators." *Id.* at 17-18.

Sneed also states that,

[w]hile Crown argues that the RC5500 complied with all the applicable regulations and standards, compliance with minimum safety standards does not absolve Crown of liability for gross negligence. The evidence shows that these standards were inadequate to protect against the known risks, and Crown's adherence to them does not negate the extreme risks posed by the forklift's design.

*Id.* at 18.

In response, Crown contends that Sneed has not provided a specific factual allegation of how its conduct rose to the level of gross negligence or malice and that Sneed's allegations "do not go beyond mere legal conclusions." Dkt. No. 78 at 28.

Crown asserts that the undisputed evidence shows that "the [subject] forklift complied with all applicable regulations and standards"; that it "warned about the risk of left-leg injury in its on-product warnings, manuals, and training materials"; and that it "actively considered the risk of left-leg injuries, balanced it against other risks, and reasonably prioritized protecting against what Crown determined were more severe risks." *Id.* (citing Dkt. No. 78-1 at 45-51, 56, 63).

And Crown points to other federal district courts' decisions, applying their respective state laws, that have rejected punitive damages claims against it in similar

cases. *See, e.g., Mchale v. Crown Equip. Corp.*, No. 8:19-cv-707-T-27SPF, 2021 WL 808860 (M.D. Fla. Mar. 3, 2021) (granting Crown summary judgment on punitive damages claim because "the possibility that an alternative design might prevent some injuries is insufficient to establish that Crown's conduct constituted intentional misconduct or gross negligence").

Sneed has not presented evidence of acts or omissions by Crown that involve an extreme degree of risk of harm or constitute a conscious indifference to the rights and safety of forklift operators. And "[m]erely alleging an act or failure to act constitutes gross negligence is not sufficient." *True v. Robles*, No. SA–08–CA–53–OG, 2008 WL 11334971 (W.D. Tex. June 30, 2008), *aff'd*, 571 F.3d 412 (5th Cir. 2009).

To the extent that Sneed's experts proffered a safer alternative design under Texas law, such as the addition of a door or enclosure to the operator compartment of the subject forklift, the undersigned agrees that, while such a design "likely would prevent some injuries … that possibility is not sufficient to permit a reasonable juror to conclude it was outrageous for Crown to find the benefits in those cases did not outweigh the risks in others and that warning customers and operators of the remaining danger associated with an open compartment was the safer course." *Martin v. Crown Equip. Corp.*, No. 05-3407-cv-S-GAF, 2008 WL 9858430, at *8 (W.D. Mo. Jan. 23, 2008).

And, so, the Court should not determine that a finding of complete indifference or conscious disregard is warranted because manufacturers of industrial equipment like forklifts, which present injury risks, could otherwise "be subject to punitive

damages regardless of design." *Id.*

Concerning Sneed's other claims (such as, for ordinary negligence), a defendant in Texas "cannot be grossly negligent without being negligent." *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App. – Austin 1990, writ denied); *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 206 (Tex. App.–Texarkana 2008, no pet.).

Because there is no evidence to sustain Sneed's allegations of negligence, there is also insufficient evidence to substantiate Sneed's claims of gross negligence as the threshold for gross negligence is significantly higher than that of negligence. *Accord Gould v. Wood*, No. 3:18-cv-786-K-BN, 2019 WL 1930053 (N.D. Tex. Apr. 4, 2019) (applying the same reasoning and finding that defendants were entitled to summary judgment on plaintiff's gross negligence claims).

Crown is entitled to summary judgment on Sneed's punitive damages claim.

## Recommendation

The Court should grant Crown's Motion for Summary Judgment [Dkt. No. 77] in its entirety and dismiss Sneed's claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: February 10, 2025

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE